Caldwell, J.
This case comes into this court on a petition in error, and the findings of fact and law by the trial court below. The principal facts in the case are these: John Cody in his life time sent three thousand dollars to Ethan Rogers in Cleveland, to be invested for said John Cody. by buying real estate for John Cody in the city of Cleveland. Ethan Rogers purchased the real estate described in the petition of the plaintiff with said money, taking the title thereto in his own name by deed of convey *172 anee duly executed and delivered, but held said title in trust for the said John Oody. Ethan Rogers in his life time never claimed to have any rights in said property other than as agent or trustee for said John Oody and as the holder of the naked legal title, in trust for the said John Oody and his heirs as such heirs. In the life time of Ethan Rogers and John Oody, after the purchase of said real estate by Ethan Rogers, John Oody dealt with said property as though the legal title stood in him. He mortgaged the property with the assent of Ethan Rogers.
Then Ethan Rogers rented the property, as agent or trustee of the said John Oody, and as such trustee collected the rents thereon, and as such agent and trustee, he paid the taxes thereon, and as such agent and trustee he 'insured the property and made what repairs were necessary, and accounted for the remainder of the rents, over and above such expenses, to John Oody in his life time, and, after his death, to Fannie Oody, the widow of John Oody, until her re-marriage, and then to Fannie C. Oody, John Cody’s •daughter, down to the deed of said Ethan Rogers to Fannie O. Oody. John Cody died testate on the 24th of August, A. D. 1854, leaving Fannie Oody, his widow, and Fannie O. Oody, then an infant, his only issue. At the time of his death John Oody was domiciled in the state of California where his will was admitted to probate. The will provides as follows:
“I give and bequeath to my wife Fannie Oody, all my estate, both real and personal, of which I am now possessed and own,to be used and enjoyed by her during her natural life in case she remains my widow, and immediately after her decease or marriage again I give and devise the same to my daughter Fannie O. Oody and to her heirs and assigns. In case my daughter dies without issue, I then give and devise the same from and immediately to my nephew John O. Sullivan, of Seneca Falls, state of New York.
“And I hereby appoint Ethan Rogers, of Ohio Oity, *173 ■state of Ohio, my executor, and Fannie Oody, my wife, my ■executrix of this my last will and testament. • In testimony ■whereof I have set my hand and seal this 23rd day of August, A. D. 1854.”
John Oody had no other real estate than that described :in the petition, at the time of his death.
On the 8th day of September, 1854, Fannie Oody duly ■elected to take under the will, and not at law. John O’Sullivan had deceased ' unmarried aud without issue before the death of John Oody. Fannie Cody, the wife of .said John Oody, after his death and during the life of said Fannie G. Oody, married one Samuel Williams, by whom .she had as issue, during the life of said Fannie O. Oody, said defendants, Walter W. Williams, and Iola Olmstead, .married to the said Charles A. Olmstead, and no others.
Ethan Rogers, on the marriage of said Fannie Oody, ■was appointed guardian of Fannie O. Cody. After the death of John Oody, Ethan Rogers continued to rent the .property for Fannie Cody his widow, down to the re-marriage of Fannie Oody, and after her marriage as the guardian of Fannie C: Oody, and he paid taxes, insurance, ■collected the rents, made repairs, and wbat remained, of the rents he paid, first, to Fannie Oody, and, after her -marriage to Fannie O. Oody. Ethan Rogers never claimed nor had any title to or possession of said premises, save as agent and trustee of John Oody, and, after his death, of Fannie Cody and, after her re-marriage, of Fannie O. Oody, and Fannie O. Oody obtained the possession of said premises ■ on the re-marriage of sajd Fannie Cody.
Ethan Rogers conveyed said real estate to said Fannie <0. Oody in 1857, his wife joining in the deed; and the deed states that it was made for the consideration of three thousand dollars, being sent to him by John Oody, the father of Fannie O. Oody, the only, daughter and heir of ¡said John Oody, deceased; said money having been sent to *174 him to be invested as said Ethan Rogers should think proper; said amount being received to his full satisfaction of Fannie O. Cody by her father as aforesaid, on the 18th day of August, 1869.
Said Fannie C. Ccdy died a minor, intestate, without issue, unmarried, seized in fee simple of said land, October 18,1896. On the 19th day of January,1893,Fannie Williams died. The defendants, Walter ' W. Williams, Iola Olmstead and Charles A. Olmstead áre the sole heirs at law of Fanny by her second husband Samuel Williams, and have, since the 19th day of January, 1893, been in possession of said premises claiming title thereto as heirs of Fannie.
The plaintiffs in the court below, and the defendants other than Charles A. Olmstead, Iola Olmstead and Walter Williams, are the sole heirs of the said John Cody, or the husbands and wives of sneh heirs, as set forth in the petition, and they claim that upon the death of Fannie C. Cody, Fannie Williams became seized of a life estate in the premises as the mother of Fannie C. Cody and widow of John Cody. That the estate came to Fannie C. Cody from John Cody, her ancestor, and was ancestral property when owned by her, and that the plaintiffs and the defendants other than Charles A. Olmstead, Iola Olmstead and Walter Williams take the property by reason of their blood relation to the deceased Fannie C. Cody and her ancestor, John Cody.
The defendants, Charles A. Olmstead, Iola Olmstead and Walter Williams claim that the title to the property that Fannie C. Cody held at the time.of her death, came to her from Ethan Rogers,, and was not ancestral property, and descends to them by reason of their blood relation to her.
These are the questions presented by the record in this case for determination. The determination of these questions involves the consideration, first, of the statutes governing the descent of property in Ohio. Section 4158 con *175 'trols the descent of property known as ancestral property, ■and reads:
“When a person dies intestate, having title or right to any real estate or inheritance in this state, which title came to such intestate by descent, devise, or deed of gift from an ancestor, such estate shall descend and pass in parcenary to his or her kindred in the following course:
“First — -To the children of such intestate, or their legal representatives.'
"Second — If there are no children or their legal representatives living, the estate shall pass to and vest in the husband or wife, relict of such intestate, during his or her natural life:
“Third — If such intestate leave no husband or wife relict of himself or herself,or at the death of such relict, the estate shall pass to and vest in the brothers and sisters of the intestate who are of the blood of the ancestor from whom the estate came, or their legal representatives, whether such brothers and sisters be of the whole or half ■of the intestate.
“Fourth — Jf there are no brothers or sisters of the intestate of the blood of the ancestor from whom the estate came, or their legal representatives, and the estate came by deed of gift from an ancestor who is Jiving, the estate shall descend to such ancestor:
“Fifth — If the ancestor from whom the estate came is deceased, the estate shall pass to and vest in the children of the ancestor from whom the estate came, or their legal representatives; if there are no children of the ancestor from whom the estate came, or their legal representatives, the estate shall pass to and vest in the husband or wife of such ancestor, if a parent of the decedent, during the life of»such relict; and on the death of such husband or wife, or if there is no such husband or wife, the estate shall pass to and vest in the brothers and sisters of such ancestor, or their legal representatives, and for want of such brothers and sisters, or their legal representatives, to the brothers and sisters of the half blood of the intestate, or their legal representatives, though such brothers and sisters are mot of the blood of the ancestor from whom the estate came.
*176 “Sixth — If there are no such half-brothers and sisters of*' the intestate, or their legal representatives, the estate shall1 pass to the next of kin to the intestate of the blood of the ancestor from whom the estate came, or their legal representatives. ”
It is claimed by the kindred of -John Cody, that after* the death of Fannie C. Cody, the wife relict of John Cody during her life, took a life estate, and that subject to the life estate the estate passed to and vested in the brothers- and sisters of John Cody and their legal representatives.
Section 415ft, Revised Statutes, marks the order of descent where the estate came by purchase, and reads:
“If the estate came not by descent, devise or deed of" gift, it shall descend and pass as follows:
“First — To the children of the intestate and their legal-representatives.
“Second- — -If there are no children or their legal representatives, the estate shall pass and be vested in the husband or wife relict of "such intestate.
“Third — If such intestate leave no husband or wife, relict of himself or herself, the estate shall pass to the brothers- and sisters of the intestate of the whole blood, and their* legal representatives.
“Fourth — If there are no brothers or sisters of the intestate of the whole blood, or their legal representatives, the estate shall pass to the brothers and sisters of the half' blood, and their legal representatives.
“Fifth — If there are no brothers-or sisters of the intestate of the half blood, or their legal representatives, the-estate shall ascend to the father; if the father is dead, then to the mother.
“Sixth- — -If the father and mother are dead, the estate-shall pass to the next kin, and their legal representatives, to and of the blood of the intestate.”
' The parties to the action, who claim Fannie C._ Cody had title to this property by purchase from Ethan Rogers,, claim that the property vests in them as the brothers-andt sisters of the intestate of the half blood.
*177 In order to determine as to whether this land vests as ¡ancestral or non-ancestral property upon the death*of Fannie C. Cody, it is important to determine, first, what the ¡statute means where it refers to a title that came “by descent, devise, or deed of gift”; whether the word “title” refers exclusively to the legal title, or ^whether it means ■equitable title.
The supreme court have, in several cases, defined the term-“title” as used in these sections of the statute.
In Brower v. Hunt, 18 Ohio St. ,311,the fourth paragraph •of the syllabus reads: “The title to real estate which must have come to an intestate by devise, or deed of gift from an ancestor, to constitute ancestral property, is the title under which the intestate immediately held.”
Fannie C. Cody, prior to receiving the deed from Ethan Rogers, had inherited from her father John Cody all the interest that he had in the property at the time of his death, which is conceded to be the entire equity and possession of the property, and the entire title except the bare legal title that was vested in Ethan Rogers. -After inheriting this from her father, Ethen Rogers conveyed to her the legal title to the same property. If both conveyances to her remained separate and distinct until the time •of her death,then,at that time, she held the property by two separate and distinct titles; but, if the equitable title inherited from her father merged in the legal title that she got from Ethan Rogers, then the title under which she held at the time of her death, would be the title she received from Ethan Rogers.
As to whether or not such merger would take place upon both titles uniting in her (Fannie C. Cody),we will consider hereafter. '
In Patterson v. Lamson, 45 Ohio St., 77, the court say,
‘“In determining whether real estate is ancestral 'or otherwise, the course of descent is to be controlled by the legal-¡title.”
*178 In Stimbul v. Martin (Stone v. Doster), 50 Ohio St., 495, the court held, “The descent of real estate is controlled by the legal title, When the legal and equitable title unite in the same person, the latter is merged in the former, and the whole estate descends according to the-course of the legal title. ” On page 525 the court say, “The legal title draws to it the whole estate, and carries it in the same channel of descent as if the equitable estate bad never existed. ”
In Higgins v. Higgins, 39 Weekly Law Bulletin, 40, decided September 17th, 1897, by the supreme court of' Ohio, the supreme court says: “In determining questions as to whether lands came by .purchase or 'descent,, regard is had to the legal title alone, uninfluenced by considerations of equity.”
These cases settle the law for Ohio, that in determining' the question of ancestral or non-ancestral property, the courts will look to and follow only the legal title, and this holding is in harmony with the holdings generally of other courts.
It becomes important, in the next place, to inquire from whence Fannie O. Oody got the title of which she died seized. It is claimed that she inherited this property-from her father John Cody, and that John Cody, in his = life-time, while he had only an equity in the property, had-a right at any time to call upon Ethan Rogers for a deed-giving him a complete legal title to the property, and that when Ethan Rogers deeded this property to Fannie C. Cody, he did nothing more than to confirm in her a title-which she already held. It is claimed that Ethan Rogers held no estate to convey; he held-nothing but the naked, legal title; all else was vested in Fannie C. Cody before he-gave her the deed of the property, and as a result, all the-interest she ever had in the property, came to her from her father.
*179 The facts found by the trial court do not disclose’the purpose of John Oody in having Ethan Rogers take and retain the legal title to the property.
There seems to have been an understanding between them, and Ethan Rogers most likely conveyed the property at the time he did, for the reason that the purpose of his trust had been fulfilled. John Oody lived in California, Ethan Rogers lived in Cleveland where the property was situated, and he had, while he held the trust, possession of the property with his cestui que trust, and supervision over the property. He performed all acts of looking after the property, and paid the net income of the property to the equitable owner. The facts warrant the conclusion that he had, during his trust, at least a qualified possession of the property. The facts'show that he held the- title in trust; and it is most likely, under the facts, that his control of the property is referable to his trusteeship rather than to his character of a mere agent. It is not usual to transfer to an agent the title of property that he may look after it.
In the absence of facts to the contrary, it will be presumed that the trustee did his duty under the trust, in transferring the title when he did. If this be true, then his cestui que trust could not have compelled him to transfer it earlier.
The facts, then, warrant the conclusion that the owner of the equitable estate did not have the entire and exclusive possession of the property, and that the equitable owner could not at any time have called upon the trustee to convey prior to the time when he did convey.
Those cases, holding that one who owns the entire equity in property, and is in the full possession of the same, with the right at'any time to require the holder of the legal, title to transfer the same to him, is the owner of a low order of legal title, have no application to this case.
John Codv. then, while he lived, after the deed t© Rog, *180 ers, h&d the equitable title to the property, and, after the marriage of Fannie Cody to Williams, Fannie C. Cody was vested with the same equity until Rogers conveyed to her the legal title. Did the equitable merge into the legal title at the time Fannie C. Cody became the owner of both ?
It cannot be urged merger did not take place because there was an intervening estate. It is claimed the • dower of Fannie Cody would prevent Such merger. If it be admitted that dower would prevent merger, which may well be doubted, yet the facts did not show that Fannie Cody had dower in this property. The facts show she took under the will of John Cody, her husband; but they do not show that by the law of California, the state cf their residence at the time of his death, she could both take under his will and have dower in his real property.
No reason appears in this case 'why the equity in the property owned by Fannie O. Cody did not merge into the legal title conveyed to her by Ethan Rogers. The authorities all seem to warrant this conclusion.
Higgins v. Higgins, 39 Law Bulletin, 40; Stone v. Doster, 50 Ohio State 495; Hopkins v. Dumas, 42 New Hampshire 296; Shepard v. Taylor, 15 Rhode Island 204; Selby v. Alston, 3 Vesey, Jr., 339; Goodright v. Wells, Douglas 771; Nicholson v. Halsey, 1 Johnson’s Ch., 417.
The deed recites that it is made in consideration of three thousand dollars given to the grantor, at the time he got the title to the property, by John Cody, This fact cannot modify the character of the title conveyed by Ethan Rogers, nor does it raise the equitable title into a legal title, nor can we see how it in any way modifies the question of merger. It only proves that Ethan Rogers held' the title in trust.
Can it be claimed that the fact that Fannie C. Cody owned the entire equity in the property at the time the deed was given her, and got the legal title by reason *181 of money paid by her father for her benefit in his life-time, .gives her such a full interest in the property that now the • court will consider her entire title as coming to her from her father by devise and deed of gift? Her father never deeded it to her; Ethan Rogers did, and, as the deed recites, for a full consideration from her, paid by her father ■ in his life-time.
The laws of descent are mere arbitrary rules for. the transmission of property, enacted by the legislature, and can not be modified by courts by reason of equitable considerations.
When the statute says, “when a person dies intestate, having title or right to any real estaté or inheritance in this state, which title came to such intestate by descent, devise or deed of gift from an ancestor,” the court is not ■ at liberty to follow into fields of equity or hunt' after equitable titles when there is a legal title the intestate died seized of. That legal title is the only one comprehended by the statute. The source of it to the intestate determines whether the estate is to descend a's ancestral or non-ancestral property.
Higgins v. Higgins, 39 L. B. 40; Patterson v. Lamson, 45 Ohio State 77; Stone v. Doster, 50 Ohio State 495; Hopkinson v. Dumas, 42 New Hampshire 296; Shepard v. Taylor, 15 Rhode Island 204; Selby v. Alston, 3 Vesey, Jr. 339; Goodright v. Wells, Douglas 771; Nicholson v. Halsey, 1 Johnson’s Ch. 417; Armington v. Armington, 28 Ind, 74.
It is claimed that Bond v. Swearingen, 1 Ohio, 395, lays down a different rule „where the equitable estate includes a right to the entire property with a right to demand a transfer of the legal title, coupled with possession, That was an action in ejectment, and in such an action the court, in looking to see who has the legal title, often, if ’not always, gives importance to the equities of the *182 parties. Had the court left out of view all equities of the parties, quite a different conclusion might have been reached. The case impresses one that the doctrine of estoppel led to the court’s holding that the heirs of Massey took the title from the government by descent. This holding was not necessary to reach the conclusion the court did. The court says, had Massey obtained the legal title, it would have inured at once to the benefit of his vendee. And this would be equally true as to his heirs if they received ■ the legal title after the death of Massey. Hence they are estopped from claiming any title to the land such as Massey had conveyed under the covenants of his deed in his lifetime. Later cases show how the court understood their-decision: Allen v. Parish, 3 Ohio, 107-117.
In Douglass v. McCoy, 5 Ohio, 522, the court say of Bond v. Swearingen, in the opinion there expressed, “That Massey after his entry and survey, might dispose of the lands; and when a patent was afterwards issued, either to himself or bis heirs, by which the legal title became perfect, it inured to the benefit of his grantees, so as to make-their title good.’’
To the same point is Avery v. Duffrees, 9 Ohio, 145-148; Jackson v. Williams, 10 Ohio, 69.
In 1 Dembitz on Land Titles, 267, note 159, after citing Patterson v. Lamson, referring to the cases therein cited, is added “ Bond v. Swearingen, 1 Ohio, 395, must be considered overruled.’’
From what I have said it follows, that the title to the land' in question, of which Fanny C. Cody died seized, did not come to her by deed of gift from an ancestor within the meaning of section 4158 of the Revised Statutes, and the land, upon the death of Fanny C. Cody, descended to her heirs Iola Olmstead and Walter Williams in fee simple under section 4159 of the Revised Statutes; and judgment. *183 will be entered reversing the judgment of the common* pleas, and affirming in them the'title to the land.
Boynton & Horr, for Plaintiffs in Erorr.
White, Johnson, MeCaslin & Cannon,lor Defendants in* Error.